**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In the Matter of the Complaint of | ) | |
| RQM, LLC, Owner of the Motor Yacht | ) | Case No. 10 CV 5520 |
| BAD INFLUENCE II, for Exoneration | ) | |
| From or Limitation of Liability, | ) | |
| | ) | |
| Plaintiff. | ) | In Admiralty |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

Third-party plaintiffs RQM, LLC ("RQM") and Brunswick Corporation, including its operating division, Brunswick Boat Group (together, "Brunswick") filed motions to strike third-party defendant Trace Ambulance, Inc.'s ("Trace") affirmative defense. (R. 88, RQM Mot.; R. 103, Brunswick Mot.) For the reasons below, the Court grants RQM and Brunswick's motions.

**BACKGROUND**

On March 12, 2010, Scot Vandenberg and Patricia Vandenberg filed a lawsuit in the Circuit Court of Cook County against RQM, LLC ("RQM"), Brunswick Corporation, and Brunswick Boat Group (a division of Brunswick Corporation) (together, "Brunswick"). The Vandenbergs' lawsuit arises out of an incident that took place on September 1, 2009, during an event that Mr. Vandenberg's employer, Trace Ambulance, Inc. ("Trace"), sponsored on a motor yacht that it chartered from RQM. At that event, while the yacht was anchored in the coastal waters of Lake Michigan, Mr. Vandenberg fell from the yacht's stern top deck to its stern well deck and sustained serious injuries. Mr. Vandenberg brings claims against RQM and Brunswick for the injuries he sustained during the incident, and his wife claims damages for loss of consortium.

Seeking the protections provided in the Shipowners' Limitation of Liability Act, 46 U.S.C. §§ 30505 *et seq*, and in accordance with the Federal Rules of Civil Procedure, Supplemental Admiralty and Maritime Claims Rule F ("Rule F"), RQM filed a timely Complaint for Exoneration From or Limitation of Liability in this Court on August 31, 2010. (R. 1.) The Court subsequently enjoined from further prosecution and litigation all other related matters, including the Vandenbergs' state court action. (R. 14.) On October 8, 2010, the Vandenbergs filed a Claim Pursuant to Rule F. (R. 24.) Both Vandenbergs bring negligence claims and strict liability claims against Brunswick, the yacht's manufacturer. Against RQM, Mr. Vandenberg brings an additional negligence claim and Patricia Vandenberg brings a loss of consortium claim. (*Id.*)

On February 3, 2011, RQM filed a third-party complaint ("RQM TPC") against Trace pursuant to Federal Rule of Civil Procedure 14(c). (R. 73.) In its TPC, RQM brings admiralty or maritime claims under Rule 9(h) for contribution and indemnification. On March 14, 2011, Brunswick filed a similar third-party complaint ("Brunswick TPC") against Trace, bringing admiralty or maritime claims under Rule 9(h) for contribution and indemnification. (R. 86.)

Trace answered the contribution claim in both parties' third-party complaints, and raises an affirmative defense to limit its contribution liability to RQM and Brunswick to an amount not to exceed its liability under the Illinois Worker's Compensation Law. (R. 79, Trace Answer to RQM TPC, at 6; R. 91, Trace Answer to Brunswick TPC at 7.) Trace contends that an Illinois Supreme Court decision, *Kotecki v. Cyclops Building Corporation*, 146 Ill.2d 155, 586 N.E.2d 1023 (1992), mandates this limitation. RQM and Brunswick now move to strike Trace's affirmative defense to their third-party complaints, claiming that it conflicts with federal admiralty law.

2

**LEGAL STANDARD**

Pursuant to Rule 12(f), the Court can strike "any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f); *Delta Consulting Group, Inc. v. R. Randle Constr., Inc.*, 554 F.3d 1133, 1141 (7th Cir. 2009). "Affirmative defenses will be stricken 'only when they are insufficient on the face of the pleadings.'" *Williams v. Jader Fuel Co.*, 944 F.2d 1388, 1400 (7th Cir. 1991) (quoting *Heller Fin. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989)). "Motions to strike are not favored and will not be granted unless it appears to a certainty that plaintiffs would succeed despite any state of the facts which could be proved in support of the defense." *Id.* (internal quotation marks and citations omitted). Yet, "[i]t is appropriate for the court to strike affirmative defenses that add unnecessary clutter to a case." *Davis v. Elite Mortgage Servs.*, 592 F. Supp. 2d 1052, 1058 (N.D. Ill. 2009) (citing *Heller*, 883 F.2d at 1295). "It is also true that because affirmative defenses are subject to the pleading requirements of the Federal Rules of Civil Procedure, they must set forth a 'short and plain statement' of all the material elements of the defense asserted; bare legal conclusions are not sufficient." *Id.* (citing *Heller*, 883 F.2d at 1294; Fed. R. Civ. P. 8(a); *Renalds v. S.R.G. Rest. Group*, 119 F. Supp. 2d 800, 802 (N.D. Ill. 2000)). District courts have considerable discretion under Rule 12(f). *See Delta*, 554 F.3d at 1141-42.

**ANALYSIS**

In its affirmative defense to RQM and Brunswick's contribution claims, Trace asserts that an Illinois Supreme Court decision limits its contribution liability to RQM and Brunswick to no more than the amount of its worker's compensation liability. *See Kotecki*, 146 Ill.2d 155. The sole issue raised in *Kotecki* was whether an employer, sued as a third-party defendant in a product liability case, could be liable for contribution in an amount greater than its statutory

3

liability under the Illinois Workers' Compensation Act, Ill. Rev. Stat. 1987, ch. 48, par. 138.5 *et seq.* ("IWCA"). *Id.* at 156. The case specifically involved the interplay between two state laws: the IWCA and the Contribution Among Joint Tortfeasors Act, Ill. Rev. Stat. 1989, ch. 70, par. 301 *et seq.* ("Contribution Act"), which provides, in relevant part, that "where 2 or more persons are subject to liability in tort arising out of the same injury to person or property . . . there is a right of contribution among them, even though judgment has not been entered against any or all of them." Seeking to "provide[] the fairest and most equitable balance between the competing interests of the employer and the third-party defendant," *Kotecki*, 146 Ill.2d at 165, the Illinois Supreme Court held that an employer could not be found liable for contribution in an amount that exceeded its exposure under the IWCA. *Id.* It adopted this rule from a Minnesota Supreme Court case, *Lambertson v. Cincinnati Corp.*, 312 Minn. 114, 257 N.W.2d 679 (1977)).

RQM and Brunswick each ask the Court to strike Trace's affirmative defense on the ground that it impairs their rights under federal admiralty law by imposing a restrictive cap on their third-party contribution claims. (R. 88, RQM Mot. to Strike, at 2; R. 103, Brunswick Mot. to Strike, at 2.)[1]

In its response briefs, Trace argues that it is too early to determine whether the Court has subject matter jurisdiction over the underlying matter because "this case has not been completely removed from state court to federal court." (R. 95, Trace Resp. to RQM Mot. to Strike, at 2; R. 107, Trace Resp. to Brunswick Mot. to Strike, at 2.) Trace also contends that it is not yet clear whether federal admiralty law or state law should apply to this case. Trace may be conflating a

---

[1] Brunswick also moves to strike Trace's affirmative defense on the ground that Scot Vandenberg should not have received worker's compensation benefits from Trace. (R. 103, Brunswick Mot. to Strike at 2-3.) Because the initial argument is dispositive, the Court need not address this assertion in its ruling.

jurisdictional argument with its choice of law argument[2] – Trace's response briefs to RQM and Brunswick's motions primarily focus on choice of law matters, and Trace has not filed a motion to dismiss either party's third-party complaint for lack of subject matter jurisdiction. Nevertheless, because the Court must determine that it possesses subject matter jurisdiction on its own accord, *see Cook v. Winfrey*, 141 F.3d 322, 325 (7th Cir.1998) ("It is axiomatic that a federal court must assure itself that it possesses jurisdiction over the subject matter of an action before it can proceed to take any action respecting the merits of the action."), the Court first undertakes a jurisdictional analysis before addressing the viability of Trace's affirmative defense.

I. **The Court Has Subject Matter Jurisdiction Over The Present Case**

Article III of the U.S. Constitution vests federal courts with original jurisdiction over "all Cases of admiralty and maritime Jurisdiction." U.S. Const. art. III, § 2. Congress codified that power in 28 U.S.C. § 1333(1), which provides that "[t]he district courts shall have original jurisdiction, exclusive of the courts of the States, of . . . [a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." Pursuant to the Supreme Court's ruling in *Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, "a party seeking to invoke federal admiralty jurisdiction pursuant to 28 U.S.C. § 1333(1) over a tort claim must satisfy conditions both of location and of connection with maritime activity." 513 U.S. 527, 534, 115 S.Ct. 1043, 130 L.Ed.2d 1024 (1995).

---

[2] Indeed, "[n]o court may decide a case without subject matter jurisdiction, and neither the parties nor their lawyers may stipulate to jurisdiction or waive arguments that the court lacks jurisdiction." *Weaver v. Hollywood Casino-Aurora, Inc.*, 255 F.3d 379, 381 (7th Cir. 2001) (citing *United States v. Tittjung*, 235 F.3d 330, 335 (7th Cir. 2000)).

In applying the 'location' test, a court "must determine whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water." *Id*. RQM alleges that the tort in this case occurred on a vessel on Lake Michigan. (R. 1, Compl., at ¶¶ 3, 6.) The Vandenbergs corroborate this claim. (R. 24, Vandenbergs' Claim Pursuant to Rule F, at ¶ 7 ("all events described herein took place within the State of Illinois and the navigable waters adjacent thereto"), ¶¶ 16, 17 (describing the incident as occurring on a chartered cruise on Lake Michigan).)[3] Lake Michigan is a "navigable waterway" for purposes of federal admiralty jurisdiction. *See Sisson v. Ruby*, 497 U.S. 358, 360, 110 S.Ct. 2892, 111 L.Ed.2d 292 (1990). Therefore, this case satisfies the 'location' prong of the jurisdictional test.

The Seventh Circuit has held that the 'location' test remains the only jurisdictional test when the tort in question occurs on a boat. *See Tagliere v. Harrah's Ill. Corp.*, 445 F.3d 1012, 1014-15 (7th Cir. 2006) (finding that "[t]he main practical use of the [*Grubart*] 'connection' test has been to expel from the admiralty jurisdiction freak cases" and holding that "[w]hen a boat is involved, . . . the location rule is not only thoroughly compatible with the language of the Extension of Admiralty Jurisdiction Act [46 U.S.C. 30101(a)], but appears to have survived *Grubart* and thus to be the test under the general admiralty jurisdiction conferred by 28 U.S.C. § 1333(1), as well."); *see also Grubart*, 513 U.S. at 542 ("This Court has not proposed any radical

---

[3] Trace does not take a position on these allegations. Rather, it contends that the Court cannot determine subject matter jurisdiction based solely on the pleadings. (R. 95, Resp. to RQM Mot., at 2; R. 107, Resp. to Brunswick Mot., at 2.) Trace is incorrect. In accordance with the law governing motions to dismiss under Rule 12(b)(1), "[i]f a defendant is challenging the sufficiency of the allegations regarding subject matter jurisdiction, the Court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff." *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003) (en banc). Accordingly, the Court accepts RQM's well-pleaded allegations regarding the situs of the incident as true for purposes of subject matter jurisdiction. It bears noting that the Vandenbergs corroborate RQM's allegations.

alteration of the traditional criteria [i.e., location] for invoking admiralty jurisdiction in tort cases, but has simply followed the lead of the lower federal courts in rejecting a location rule so rigid as to extend admiralty to a case involving an airplane, not a vessel, engaged in an activity far removed from anything traditionally maritime."). Even if the Seventh Circuit had not effectively eliminated the 'connection' test under certain circumstances, the facts of this case would still satisfy *Grubart*'s 'connection' test, and thus confer admiralty jurisdiction in this matter.

The 'connection' (or 'nexus') test requires district courts to: (1) "assess the general features of the type of incident involved, to determine whether the incident has a potentially disruptive impact on maritime commerce," and (2) "determine whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity." *Grubart*, 513 U.S. at 534 (citing *Sisson v. Ruby*, 497 U.S. 358, 363-65,110 S.Ct. 2892, 111 L.Ed.2d 292 (1990)) (internal quotation marks and citations omitted). The first part of this inquiry requires an assessment of the "potential effects," not the "particular effects of the incident." *Id*. (citation omitted). In *Tagliere*, the Seventh Circuit found that "an injury to a passenger," as the Vandenbergs allege in the underlying lawsuit, "could have a disruptive effect [on maritime activity], if the boat had to make an unscheduled stop to get him to a hospital." *Tagliere*, 445 F.3d at 1015 (offering this explanation before reiterating that "effect on maritime commerce is not necessary to admiralty jurisdiction"). Thus, the facts of this case satisfy the first prong of the "nexus" test. For the second part of this inquiry, "we look to whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity." *Grubart*, 513 U.S. at 539. That, too, is easily answered, because "[n]avigation of boats in navigable waters clearly falls within the substantial relationship." *Id*. at

7

541 (citing *Foremost Ins. Co. v. Richardson*, 457 U.S. 668, 675, 102 S.Ct. 2654, 73 L.Ed.2d 300 (1982)); *Weaver v. Hollywood Casino-Aurora, Inc.*, 255 F.3d 379, 386 (7th Cir. 2001) (same). Accordingly, federal admiralty jurisdiction exists in this case.

## II.     Federal Admiralty Law Bars Trace's Affirmative Defense

"With admiralty jurisdiction comes the application of substantive admiralty law." *Grubart*, 513 U.S. at 545 (quoting *East River S.S. Corp. v. Transamerica Delaval Inc.*, 476 U.S. 858, 864, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986)). "[T]he smooth flow of maritime commerce is promoted when all vessel operators are subject to the same duties and liabilities." *Foremost Ins. Co. v. Richardson*, 457 U.S. 668, 676, 102 S.Ct. 2654, (1982). Otherwise stated, "[t]he benefit of applying federal law in admiralty is uniformity." *Rufolo v. Midwest Marine Contractor, Inc.*, 6 F.3d 448, 451 (7th Cir. 1993), *vacated and remanded on other grounds*, 511 U.S. 1050, 114 S.Ct. 1609, 128 L.Ed.2d (1994).

"The 'savings to suitors' provision of 28 U.S.C. § 1333(1) (conferring on the federal courts original jurisdiction, exclusive of the state courts, over 'any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled') precludes *automatic* preemption of state remedies by admiralty law." *Robinson v. Alter Barge Line, Inc.*, 513 F.3d 668, 672 (7th Cir. 2008) (emphasis added); *see also Bagrowski v. American Export Isbrandtsen Lines, Inc.*, 440 F.2d 502, 506 (7th Cir. 1971) ("As a general proposition, it may be said that federal power is dominant in the maritime field[.]"). "[A] 'State may modify or supplement the maritime law by creating liability which a court of admiralty will recognize and enforce'" only if the "'state action is not hostile to the characteristic features of the maritime law or inconsistent with federal legislation,' or in other words when there is no 'clear conflict' with admiralty law." *Id*. (internal citations omitted). "While states may

8

sometimes supplement federal maritime policies, a state may not deprive a person of any substantial admiralty rights as defined in controlling acts of Congress or by interpretative decisions of this Court." *Bagrowski*, 440 F.2d at 507; *see id.* at 506 (holding that "states may not deprive a party of a federally created maritime right").

The Supreme Court has created a nonstatutory right of contribution in admiralty cases. *Cooper Stevedoring Co. v. Fritz Kopke, Inc.*, 417 U.S. 106, 94 S.Ct. 2174, 40 L.Ed.2d 694 (1974); *Matter of Oil Spill by Amoco Cadiz Off Coast of France on March 16, 1978*, 954 F.2d 1279, 1315 (7th Cir. 1992); *Hillier v. Southern Towing Co.*, 714 F.2d 714, 719 (7th Cir. 1983) (*Cooper Stevedoring* "made clear that contribution is the general rule in noncollision as well as collision cases"). Although admiralty law historically divided the parties' damages equally, it has evolved to employ a comparative fault regime, allocating damages that are proportionate to each tortfeasor's determined liability. *United States v. Reliable Transfer Co., Inc.*, 421 U.S. 397, 411, 95 S.Ct. 1708, 44 L.Ed.2d 251 (1975); *see also McDermott Inc. v. AmClyde*, 511 U.S. 202, 208, 114 S.Ct. 1461, 128 L.Ed.2d 148 (1994); *City of Chicago v. M/V Morgan*, 375 F.3d 563, 573 (7th Cir. 2004); *Schadel v. Iowa Interstate R.R., Ltd.*, 381 F.3d 671, 678 (7th Cir. 2004). To cap contributions from third-party defendant employers, as Trace seeks to do in its affirmative defense, would therefore deprive RQM and Brunswick of "substantially admiralty rights as defined . . . by interpretative decisions of" the Seventh Circuit – namely, the full extent of their proportionate liability. *Bagrowski*, 440 F.2d at 507. Accordingly, Trace's affirmative defense must fail.[4]

---

[4] Seventh Circuit precedent on admiralty doctrine supports this conclusion. "[W]hen the state interest in regulating some aspect of maritime activity is very weak, the interest in uniformity might well override it and thus justify preempting state law." *Robinson*, 513 F.3d at 673. In dicta, the *Robinson* court held that "[a] state's interest in maritime safety would not cut much ice were the state trying to impose a tort principle that was contrary

As an additional note, the Seventh Circuit has rejected a substantially similar argument. In *Bagrowski*, a longshoreman suffered injuries while performing work on a steamship. The injured man received benefits from his employer, the City of Milwaukee, under the Wisconsin Workmen's Compensation Act. Approximately one year later, the injured man sued the steamship's owner in admiralty. The steamship's owner, in turn, filed a third-party contribution claim against the City of Milwaukee. The City of Milwaukee moved to dismiss the steamship owner's third-party action on the grounds that it had paid workmen's compensation benefits to its employee, and that such payment was the exclusive remedy against the City. *Bagrowski*, 440 F.2d at 503. The district court granted the City's motion and dismissed the action. On appeal, the Seventh Circuit considered whether the Wisconsin Workmen's Compensation Act precluded the shipowner from recovering under federal maritime law. Taking into account how its sister circuits resolved similar disputes, the court found that the state workers' compensation law could not preempt a shipowner's right to seek indemnification from the City of Milwaukee. *Id.* at 509. This reasoning further supports the Court's holding in this case.

Lastly, the Court addresses Trace's argument regarding the Longshore and Harbor Workers' Compensation Act ("LHWCA"). Trace submits that since the IWCA is "not contrary" to the federal LHWCA, then the Court should apply the IWCA as a quasi-extension of the LHWCA's underlying principles regarding employer liability. Trace cites no authority for this proposition. Furthermore, as the Seventh Circuit has discussed, "in enacting the 1972 Amendments to the LHWCA, 'Congress did not seek to cover all those who breathe salt air.' . . . The [Supreme] Court [has] interpreted Congress's purpose as covering 'those workers on the

---

    to established admiralty law, as by trying to substitute contributory or comparative
    negligence for the admiralty rule of divided damages in collision cases." *Id.*

situs who are involved in the essential elements of loading and unloading; it is "clear that persons who are on the situs but not engaged in the overall process of loading or unloading vessels are not covered.'" *Scott v. Trump Indiana, Inc.*, 337 F.3d 939, 946 (7th Cir. 2003) (internal citations and quotations omitted). Even if the Court were willing to entertain Trace's argument, it would not hold water because unlike the IWCA, the LHWCA only applies to a limited number of expressly maritime-related workers. Trace's argument fails.

## CONCLUSION

For the reasons stated above, the Court grants RQM and Brunswick's motions to strike Trace's affirmative defense.

**Date:** July 26, 2011

                                            **ENTERED**

                                            _____
                                            **AMY J. ST. EVE**
                                            **United States District Court Judge**