# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 10 C 5520 | **DATE** | 7/28/2011 |
| **CASE TITLE** | In Re: RQM, LLC | | |

**DOCKET ENTRY TEXT**

The Court denies Trace Ambulance Inc.'s motions to dismiss (i) Count II of RQM's Third Party Complaint [81] and (ii) Count II of Brunswick's Third Party Complaint [93].

■ [ For further details see text below.]      Notices mailed by Judicial staff.

## STATEMENT

    Third-party plaintiff RQM, LLC ("RQM") filed an amended third-party complaint against third-party defendant Trace Ambulance, Inc. ("Trace") bringing claims of contribution (Count I) and implied indemnity (Count II). Third-party plaintiff Brunswick Boat Group and Brunswick Corporation ("Brunswick") also filed an amended third-party complaint against Trace, bringing nearly identical claims. Trace now moves to dismiss the implied indemnity claim (Count II) in both third-party complaints. (R. 81, Mot. to Dismiss RQM Count II; R. 93, Mot. to Dismiss Brunswick Count II.) Given the similarity of the issues raised, the Court considers Trace's motions to dismiss together, and denies both motions.

## INTRODUCTION

**I.    Procedural Background**

    On March 12, 2010, Scot Vandenberg and Patricia Vandenberg filed a lawsuit in the Circuit Court of Cook County against RQM, LLC ("RQM"), Brunswick Corporation, and Brunswick Boat Group (a division of Brunswick Corporation) (together, "Brunswick"). The Vandenbergs' lawsuit arises out of an incident that took place on September 1, 2009, during an event that Mr. Vandenberg's employer, Trace Ambulance, Inc. ("Trace"), sponsored on a motor yacht that it chartered from RQM. At that event, while the yacht was anchored in the coastal waters of Lake Michigan, Mr. Vandenberg fell from the yacht's stern top deck to its stern well deck and sustained serious injuries. Mr. Vandenberg brings claims against RQM and Brunswick for the injuries he sustained during the incident, and his wife claims damages for loss of consortium.

| | Courtroom Deputy Initials: | KF |
|---|---|---|

Seeking the protections provided in the Shipowners' Limitation of Liability Act, 46 U.S.C. §§ 30505 *et*

*seq*, and in accordance with the Federal Rules of Civil Procedure, Supplemental Admiralty and Maritime Claims Rule F ("Rule F"), RQM filed a timely Complaint for Exoneration From or Limitation of Liability in this Court on August 31, 2010. (R. 1.) The Court subsequently enjoined from further prosecution and litigation all other related matters, including the Vandenbergs' state court action. (R. 14.) On October 8, 2010, the Vandenbergs filed a Claim Pursuant to Rule F. (R. 24.) Both Vandenbergs bring negligence claims and strict liability claims against Brunswick, the yacht's manufacturer. Against RQM, Mr. Vandenberg brings an additional negligence claim and Patricia Vandenberg brings a loss of consortium claim. (*Id.*).

On February 3, 2011, RQM filed a third-party complaint against Trace pursuant to Federal Rule of Civil Procedure 14(c). (R. 73.) In its TPC, RQM brings admiralty or maritime claims under Rule 9(h) for contribution (Count I) and implied indemnification (Count II). On March 14, 2011, Brunswick filed a similar third-party complaint against Trace, bringing admiralty or maritime claims under Rule 9(h) for contribution (Count I) and implied indemnification (Count II). (R. 86.) Trace answered the contribution claims,[1] and presently moves to dismiss the implied indemnity claims under Federal Rule of Civil Procedure 12(b)(6).

## II. Factual Background

In their third-party complaints, RQM and Brunswick generally allege the following: Trace contracted with RQM to charter the Motor Yacht "Bad Influence II" on September 1, 2009 for a company outing. (R. 73, ¶ 4; R. 86, ¶ 6.) Trace did not provide its own crew – it used RQM's crew for the outing. (R. 73, ¶ 5; R. 86, ¶ 7.) Trace invited guests on board the yacht for the company outing, and provided food, music, and beverages, including alcoholic beverages. (R. 73, ¶ 5; R. 86, ¶ 8.) During the company outing, Scot Vandenberg – Trace's President – fell from the yacht's top deck to its stern well deck and sustained severe and permanent injuries. (R. 73, ¶ 7; R. 86, ¶ 11.)

RQM and Brunswick both contend that Trace – as the party that chartered the yacht – had a duty to exercise ordinary care and caution for the safety of its guests on board the yacht. (R. 73, ¶¶ 10, 11; R. 86, ¶¶ 14, 15.) RQM and Brunswick further contend that Trace owed a duty of care to ensure that "no one consumed an excessive amount of alcohol whereby perception and/or judgment was impaired." (R. 73, ¶ 12; R. 86, ¶ 16.) RQM and Trace assert that Trace breached its duties and committed negligence by (i) failing to monitor the whereabouts of its guests, (ii) failing to monitor the alcohol consumption of its guests, including Scot Vandenberg, and (iii) permitting Scot Vandenberg to consume an excessive amount of alcohol such that his judgment and perception may have become impaired. (R. 73, ¶ 13; R. 86, ¶ 19.) Brunswick further asserts that Trace negligently failed to monitor the location of its guests to ensure that they did not access areas of the yacht that were "not intended and/or safe for passenger use." (R. 86, ¶ 19.) RQM and Brunswick deny liability for the Vandenbergs' claims, but contend that if they are found liable to the Vandenbergs, their liability will have resulted from Trace's negligent acts and/or omissions. (R. 73, ¶ 20; R. 86, ¶ 27.) As a result, RQM and Brunswick contend that they are entitled to indemnification from Trace. (*Id.*).

---

[1] Trace also raised an affirmative defense to the contribution claims, which RQM and Brunswick both moved to strike. The Court addressed those motions in a separate ruling. *See* R. 129.

## LEGAL STANDARD

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Pursuant to Federal Rule of Civil Procedure 8, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). As the Seventh Circuit has explained, this "[r]ule reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities[.]" *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)). The short and plain statement required under Rule 8 must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Under federal notice-pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Stated differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570). "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Justice v. Town of Cicero*, 577 F.3d 768, 771 (7th Cir. 2009) (holding that the court construes complaints in the light most favorable to the plaintiff, drawing all possible inferences in the plaintiff's favor).

## ANALYSIS[2]

Trace moves to dismiss the implied indemnity claims on several grounds. First, Trace asks the Court to dismiss the claims because it has no contractual obligation to indemnify RQM or Brunswick. Since the parties bring their claims under a *tort* theory of implied indemnity, however, this argument is moot.

Second, Trace contends that indemnity is not appropriate in cases where a passenger is injured because under maritime law, "the defendant must show that culpability is entirely with the other party." (R. 81, at 6 (citing *Couch v. Cro-Marine Transport, Inc.*, 725 F.Supp. 978, 984 (C.D. Ill. 1989); R. 93, at 5 (same cite).) This showing would be impossible in the present matter, Trace argues, because in order for RQM or Brunswick to bring an implied indemnity claim against Trace, a jury would need to find each of them liable for wrongdoing. As an initial matter, the authority Trace cites in support of its proposition is non-binding dicta and carries no precedential value. In addition, binding Seventh Circuit case law and the general principles of maritime law undermine Trace's argument.

The Seventh Circuit analyzed the availability of contribution and indemnity claims under the principles of admiralty law in *Hillier v. Southern Towing Company*, 714 F.2d 714 (7th Cir. 1983). Contrary to Trace's argument, the Seventh Circuit in *Hillier* observed that "many cases . . . have used the active-passive distinction to shift the entire liability from one maritime joint tortfeasor to another." *Id*. at 720 (collecting cases). "[I]f admiralty law really were hostile to the all-or-nothing approach characteristic of indemnity," the *Hillier* court explained, "the Supreme Court probably would not have invented the stevedore's implied warranty. That warranty . . . allowed indemnity despite the absence of a contract to indemnify, and did so for the same reason

---

[2] In its brief in support of its motion to dismiss Count II of RQM's third-party complaint, Trace contends that the Court cannot yet "determine whether this case conclusively falls under the jurisdiction of federal maritime law." (R. 100, at 7.) The Court addressed this in its ruling on RQM's and Brunswick's motions to strike Trace's affirmative defenses, where Trace made identical contentions, and concluded that this case falls under federal admiralty jurisdiction. *See* R. 129 (7/26/11 Mem. Op. & Order, at 5-8).

that the common law requires the active joint tortfeasor to indemnify the passive one." *Id*. at 719-20. Namely, "liability should fall upon the party best able to reduce the likelihood of injury." *Id*. at 720 (quoting *Italia Societa per Azioni di Navigazione v. Oregon Stevedoring Co.*, 376 U.S. 315, 324, 84 S.Ct. 748, 11 L.Ed.2d 732 (1964)). The Seventh Circuit proceeded to explain the rationale underlying a tort theory of indemnification:

> When the cheapest way of avoiding a careless accident is for one party to take all the precautions, the law needs a mechanism for bringing liability to bear ultimately on that party, and indemnity supplies it. Admiralty law, like common law, is concerned with safety and efficiency. The tendency to use tort liability to spread rather than to prevent losses may be stronger in admiralty than in the common law, but it is not so overpowering as to have prevented the courts from devising imaginative theories of indemnity in a variety of often tenuously contractual maritime settings.

*Id*. at 721. Trace's contention that the implied indemnification claims against it must fail as a matter of law because such claims are contingent on RQM's and Brunswick's own liability thus fails.

Third, Trace argues that pursuant to the Seventh Circuit's reasoning in *Hillier*, indemnity would not be appropriate in this case even if it engaged in negligent conduct. Trace urges this Court to adopt the Seventh Circuit's conclusion, which Trace quotes as follows:

> Unless the appellants were negligent, Mrs. Hillier will not be able to obtain damages from them. While it is possible that the [third party] was also negligent, it is unlikely that the cheapest way to have avoided the accident would have been for just one of the joint tortfeasors, the [third party], to take all the precautions. That would imply that the best method of preventing the accident would have been for the [third party] to [take preventative measures], while the appellants did nothing at all to prevent [the casuse of the injury]. As that is unlikely, this seems a case for contribution, rather than indemnity.

*Hillier*, 714 F.2d at 721. Using this rationale, Trace contends that to permit RQM and Brunswick's indemnification claims to proceed would imply that the best means of preventing the accident that caused Mr. Vandenberg's injuries would have been for Trace to assume sole responsibility for the conduct, movement, and safety of its guests on the yacht, while excusing RQM–the yacht's owner and operator, and the entity that provided the staff during the outing–and Brunswick–the yacht's designer and manufacturer–from any obligations they might have to ensure the safety of the yacht and its passengers. Trace vigorously opposes that conclusion.

The Court agrees that the Seventh Circuit's reasoning in *Hillier* may very well apply with equal force to the facts of this case. As RQM and Brunswick note in their response briefs, however, Trace ends the *Hillier* court's conclusion prematurely. In fact, the Seventh Circuit held that although *Hillier* presented an unlikely case for indemnity, "we cannot be sure with the case in so early a stage." *Id*. Similarly, it is too early in this litigation to make conclusions about which party (or parties) would most appropriately bear the avoidance costs for Mr. Vandenberg's injury. Reading the facts in the light most favorable to the third-party plaintiffs, as the Court must at the Rule 12(b)(6) stage, the Court cannot dismiss RQM's and Brunswick's indemnification claims on this basis.

Finally, Trace argues that its role "as a purchaser of services from RQM" creates no duty under which it could be held liable to indemnify RQM and Brunswick. (R. 81, at 5; R. 93, at 4.) Trace asserts that it "purchased a service from RQM; which was for Trace's employees and clients to be driven around Lake Michigan via yacht for a 5 hour time frame," and that "[a]t no time did Trace undertake any obligation to provide any services to" RQM or to Brunswick. (*Id*.) Relying on language in *Couch* that notes the "dearth of cases discussing admiralty tort claims for indemnification," *see Couch*, 725 F.Supp. at 983, Trace concludes that "there is no case law to suggest that a passenger who is not providing a service, or the employer of the passenger, would owe a boat

owner or manufacturer any such indemnity." (*Id.*)

Trace errs in analyzing its liability to RQM and Brunswick for indemnification in terms of its "duty" to them in tort. It also mischaracterizes the status in which RQM and Brunswick seek to hold it liable. In their third-party complaints, RQM and Brunswick allege that Trace, as the yacht's charterer at the time of the incident, owed a duty to its guest and injured party, Mr. Vandenberg. RQM and Brunswick allege that Trace violated *that* duty, and bring their claims against Trace in its attendant status as a wrongdoer and joint tortfeasor. The true question, therefore, is whether Trace owed a duty of care to Mr. Vandenberg. *See Hillier*, 714 F.2d at 721 ("For the [third party] to be the active wrongdoer, however, it must first be a wrongdoer. . . . That is, it must have breached a legal duty to Hillier." (internal citation omitted)); *see also id.* at 722 ("by definition they can obtain tort indemnity only from a joint tortfeasor"); *Glenview Park Dist. v. Melhus*, 540 F.2d 1321, 1325 (7th Cir. 1976) ("Inquiry as to the nature and extent of competing duties lies at the heart of any negligence case.").

The Seventh Circuit has not considered the specific situation at issue in this case – namely, whether a non-demise charterer (Trace) owes a duty of care to guests it has invited on board the yacht it has chartered. The Seventh Circuit has generally observed that under maritime law, "[t]he duty on which actionable negligence is based can never be limitless; instead, duty is dictated and measured by the exigencies of the occasion or situation as they are, or should be, known to the actor, and it varies in each case as the facts and circumstances vary." *Glenview Park Dist.*, 540 F.2d at 1327. Furthermore, "[a]s in other tort contexts, in order for liability to be imposed in a maritime allision case, the fault must be a proximate cause of the injury." *Folkstone Maritime, Ltd. v. CSX Corp.*, 64 F.3d 1037, 1046 (7th Cir. 1995). In this case, RQM and Brunswick allege that Trace's status as a charterer, its responsibility for bringing alcohol on board the yacht, its failure to regulate its guests' alcohol consumption, and its failure to monitor the movement of its guests on the yacht proximately caused Mr. Vandenberg's injuries.

RQM and Brunswick invoke Fifth Circuit case law to demonstrate Trace's duty as a charterer. In *Hodgen v. Forest Oil Corp.*, the Fifth Circuit outlined the duty of a charterer as "a hybrid duty arising from contract and tort, to persons with whom it has no contractual relationship, including vessel passengers, to avoid negligent actions within the sphere of activity over which it exercises at least partial control." *Hodgen v. Forest Oil Corp.*, 87 F.3d 1512, 1520 (5th Cir. 1996), *overruled on other grounds by Grand Isle Shipyard, Inc. v. Seacor Marine, LLC*, 589 F.3d 778, 786 (5th Cir. 2009). Trace does not contest the principle established in *Hodgen*, but calls the Court's attention to the fact that the cases relied upon for the principle articulated in *Hodgen* "establish that the traditional spheres of activity in which a time charterer exercises control and thus owes a duty include choosing the vessel's cargo, route, and general mission, as well as the specific time in which the vessel will perform its assignment." *Id.* Although this is true, it does not necessarily relieve Trace of potential liability. The "spheres of activity" over which RQM and Brunswick allege that Trace exercised "at least partial control" in this case include the guests' activities on the yacht and the provision of alcohol to the guests. The fact that these may not be "the traditional spheres of activity in which a time charterer exercises control," as Trace contends, does not definitively bar RQM and Brunswick's legal claims. Indeed, as the Seventh Circuit stated in *Glenview Park District*, "duty is dictated and measured by the occasion or situation and varies in each case with the facts and circumstances." *Glenview Park Dist.*, 540 F.2d at 1328. *See also Hodgen*, 87 F.3d at 1520 ("the parties may vary the traditional assignment of control by contract or custom").

Trace does not dispute that alcohol played a role in causing Mr. Vandenberg's injuries. Nor does Trace dispute that it arranged for the provision of alcohol aboard the yacht. In accordance with the *Hodgen* court's reasoning, "the fact that a vessel owes a duty to a passenger . . . does not mean that an accident arising from this activity cannot also be the fault of the time charterer, if the plaintiff can establish that the accident resulted in part from a decision . . . within the time charterer's control spheres." *Id.* Reading the Fifth Circuit's opinion in *Hodgen* alongside the Seventh Circuit's general observations regarding the existence of a duty of care in

admiralty law, it would be premature at this juncture to foreclose the possibility that Trace could be found liable for causing Mr. Vandenberg's injuries in the manner alleged by RQM and Brunswick in their third-party complaints.[3]

## CONCLUSION

For all these reasons, the Court finds that RQM and Brunswick have sufficiently pleaded an implied indemnification claim and denies Trace's motions to dismiss (i) Count II of RQM's Third Party Complaint and (ii) Count II of Brunswick's Third Party Complaint.

---

[3] In accordance with this determination, Trace's arguments regarding attorney's fees are moot. Trace concedes that maritime law may permit attorney's fees under a theory of implied indemnity. *See* R. 100, at 6-7; R. 109, at 6-7. If RQM or Brunswick prevails on its indemnity claim, the Court will consider the matter of attorney's fees.